820 F.2d 943
 26 ERC 1208, 55 USLW 2696, 17 Envtl.
L. Rep. 21,008
 Berton L. DUBOIS and Rose Marie Dubois, Plaintiffs-Appellees,
v.
Lee M. THOMAS, Administrator, and Morris Kay, Regional
Administrator, United States Environmental
Protection Agency, Defendants-Appellants,
City of Wheatland, W.L. Banks, State of Missouri, Missouri
Clean Water Commission, Missouri Department of
Natural Resources, and Vaughan
Construction Company, Defendants.
 No. 86-2447.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 14, 1986.
Decided June 8, 1987.
Rehearing Denied July 22, 1987.
 
 Karen Florini, Washington, D.C., for defendants-appellants.
 Karen K. Howard, Kansas City, Mo., for plaintiffs-appellees.
 Before LAY, Chief Judge, WOLLMAN and TIMBERS,* Circuit Judges.
 TIMBERS, Circuit Judge.
 
 
 1
 Appellants are Lee M. Thomas ("the Administrator") and Morris Kay ("the Regional Administrator"). We shall refer to them collectively as "appellants". They are, respectively, the Administrator of the United States Environmental Protection Agency ("EPA") and the EPA Regional Administrator for the region that includes the State of Missouri.
 
 
 2
 This appeal arises out of a "citizen's action" commenced against appellants by appellees Berton L. Dubois and Rose Marie Dubois ("appellees") under Sec. 505(a)(2) of the Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977 ("the FWPCA"), 33 U.S.C. Sec. 1365(a)(2) (1982).
 
 
 3
 Appellants appeal pursuant to 28 U.S.C. Sec. 1292(a)(1) (1982) from an order entered September 22, 1986 in the Western District of Missouri, Scott O. Wright, District Judge, Dubois v. EPA, 646 F.Supp. 741, which denied their motion to dismiss or for summary judgment, sua sponte granted summary judgment in favor of appellees, and granted appellees certain mandatory injunctive relief.
 
 
 4
 In the instant action, appellees sought, among other things, an order compelling appellants to take investigatory and enforcement action against defendant City of Wheatland ("Wheatland") regarding a contaminated creek running through appellees' property.
 
 
 5
 The district court held that Sec. 309(a)(3) of the FWPCA, 33 U.S.C. Sec. 1319(a)(3) (1982), imposes mandatory investigatory and enforcement duties on appellants. The court entered a mandatory injunction requiring appellants to "investigate and make a finding as to whether pollution has occurred on [appellees'] property in violation of the FWPCA" and, "if the finding is positive, to issue an abatement order or file a civil action". Dubois, supra, 646 F.Supp. at 746.[1]
 
 
 6
 On appeal, appellants claim, first, that the duties imposed by Sec. 309(a)(3) are discretionary, not mandatory; and, second, that, even if Sec. 309(a)(3) were to be construed as imposing mandatory duties in some circumstances, the EPA was relieved of such duties in the instant situation since defendant Missouri Department of Natural Resources ("the MDNR") already has taken enforcement action against Wheatland.
 
 
 7
 We hold that the duties imposed on appellants by Sec. 309(a)(3) are discretionary. The district court therefore should have dismissed the FWPCA claim against appellants for lack of subject matter jurisdiction. In light of this holding, we find it neither necessary nor appropriate to reach appellants' second claim on appeal.
 
 
 8
 We reverse and remand.
 
 I.
 
 9
 We summarize only those facts believed necessary to an understanding of the issues raised on appeal.
 
 
 10
 On December 5, 1985, appellees notified the Administrator pursuant to 33 U.S.C. Sec. 1365(b) (1982) that they intended to file a citizen's action. The notice stated that a creek running through appellees' property frequently was contaminated by raw sewage overflowing from a malfunctioning lift station that was part of Wheatland's municipal sewage treatment system. The notice stated that Wheatland did not have a permit for the overflow and therefore it violated Sec. 301 of the FWPCA, 33 U.S.C. Sec. 1311 (1982), which requires a permit for any discharge of pollutants into the waters of the United States.
 
 
 11
 The notice stated that appellees intended to commence an action pursuant to Sec. 505(a)(1) against Wheatland as the violator, and against appellants under Sec. 505(a)(2) for failing to carry out allegedly mandatory duties to enforce the FWPCA against Wheatland. The notice also stated that the action would be brought against the State of Missouri, which EPA in 1974 had authorized to issue and enforce permits under the FWPCA. See 33 U.S.C. Sec. 1342 (1982) (empowering the Administrator to authorize qualifying states to issue pollutant permits).
 
 
 12
 On January 28, 1986, the MDNR issued an abatement order to Wheatland, directing it to submit a technical report evaluating the sewage overflow problem and to establish a schedule for correcting it.
 
 
 13
 On February 19, 1986, appellees commenced the instant action against appellants, Wheatland, the State of Missouri[2], and others. Only Count 8 of appellee's complaint sought relief against appellants. The other counts sought relief against the other defendants and are not relevant to the instant appeal.
 
 
 14
 On June 16, 1986, appellants filed a motion in the district court to dismiss Count 8 for lack of subject matter jurisdiction, or, in the alternative, for summary judgment.
 
 
 15
 On September 17, 1986, MDNR and Wheatland entered into a settlement agreement with respect to the abatement order referred to above. Under the terms of the settlement, Wheatland must take certain steps to correct the sewage overflow problem. According to appellees, the problem had not been corrected as of the time of the oral argument of the instant appeal.
 
 
 16
 On September 22, 1986, the district court denied appellants' motion of June 16. The court, however, sua sponte granted summary judgment in favor of appellees on Count 8 and awarded appellees mandatory injunctive relief.
 
 
 17
 This interlocutory appeal followed the award of injunctive relief.
 
 
 18
 For the reasons set forth below, we reverse the order of the district court and remand the case to that court with directions to enter judgment vacating the mandatory injunction and dismissing Count 8 of the complaint to the extent that the district court's disposition of that Count is appealed from.II.
 
 
 19
 A. Statutory Framework.
 
 
 20
 Section 505(a)(2) of the FWPCA provides that "any citizen may commence a civil action on his own behalf ... against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. Sec. 1365(a)(2). We must decide on this appeal whether Sec. 309(a)(3) of the FWPCA sets forth duties "which [are] not discretionary with the Administrator." If the duties imposed by Sec. 309(a)(3) are mandatory, or "not discretionary", the district court correctly held that it had subject matter jurisdiction over appellees' FWPCA claim against appellants. If, however, those duties are discretionary, the court was without jurisdiction under Sec. 505(a)(2), and appellants' motion to dismiss the action should have been granted. Sierra Club v. Train, 557 F.2d 485, 488 (5th Cir.1977).
 
 
 21
 Section 309(a)(3) provides in relevant part:
 
 
 22
 "Whenever on the basis of any information available to him, the Administrator finds that any person is in violation of section 1311 [regarding permits for overflows] ... he shall issue an order requiring such person to comply with such section ..., or he shall bring a civil action in accordance with subsection (b) of this section."
 
 
 23
 33 U.S.C. Sec. 1319(a)(3).
 
 
 24
 We agree with the district court that the structure of this section indicates that whether it imposes mandatory or discretionary duties must be ascertained through a bifurcated analysis: first, it must be determined whether the Administrator had a mandatory duty to investigate and make a finding whenever a private citizen asserts a violation; and, second, it must be determined whether, upon making a finding of a violation, the Administrator has a further mandatory duty to take enforcement action in view of that finding.
 
 
 25
 The district court reached its conclusion that the Administrator's duties under Sec. 309(a)(3) are mandatory after surveying prior decisions. It focused in particular on Sierra Club, supra, 557 F.2d at 488-91, representing the majority view that Sec. 309 imposes only discretionary duties, and on South Carolina Wildlife Federation v. Alexander, 457 F.Supp. 118 (D.S.C.1978) ("SCWF "), representing the contrary minority view. Dubois, supra, 646 F.Supp. at 744-45. Compare also, for the majority view, State Water Control Board v. Train, 559 F.2d 921, 927 & n. 34 (4th Cir.1977) (dictum) and Zemansky v. EPA, 24 Env't Rep. Cas. (BNA) 1447, 1448 (D.Alaska 1986) and National Wildlife Federation v. Rukelshaus, 21 Env't Rep. Cas. (BNA) 1776, 1780 (D.N.J.1983) and Caldwell v. Gurley Refining Co., 533 F.Supp. 252, 255-57 (E.D.Ark.1982) with, for the minority view, Green v. Costle, 577 F.Supp. 1225 (W.D.Tenn.1983) and Illinois v. Hoffman, 425 F.Supp. 71, 76-77 (S.D.Ill.1977).
 
 
 26
 In opting for the minority view of SCWF, supra, 457 F.Supp. 118, the district court in the instant case paid little attention to the language of Sec. 309(a)(3). Rather, the court based its decision on what it believed to be the overriding policy consideration: "The spirit of the citizen suit provisions of the FWPCA is to give 'the little guy' access to enforcement power of the federal government when he has discovered pollution occurring--especially in his own back yard. To allow the EPA to simply ignore such information presented to it would defeat the purpose of the FWPCA." Dubois, supra, 646 F.Supp. at 744-45. This policy consideration led the court to conclude, first, that appellees "have shown that the EPA Administrator has a mandatory duty to make a finding whether a violation has occurred", 646 F.Supp. at 745, and, second, that "the Administrator's duty to enforce is mandatory." Id.
 
 
 27
 We disagree with both of the court's conclusions. In light of the language of Sec. 309(a)(3), its legislative history viewed as a whole, and certain well established principles governing statutory interpretation and judicial review of agency decisions, we hold the conclusion to be inescapable that the duties imposed by the statute must be viewed as discretionary.
 
 
 28
 B. Duties to Investigate and Make Findings.
 
 
 29
 In holding that Sec. 309(a)(3) imposes a mandatory duty to investigate and make findings as to alleged violations of the FWPCA, the district court relied heavily on SCWF, supra, 457 F.Supp. 118. Neither the district court in the instant case nor the SCWF court, however, stated any persuasive reason for such a holding. Indeed, the holding ignores the language of Sec. 309(a)(3), which makes no mention whatever of a duty to make findings, much less a duty to carry out an investigation of each and every citizen complaint. Cf. City of Seabrook v. Costle, 659 F.2d 1371, 1374 (5th Cir.1981) (parallel language in Sec. 113(a)(1) of the Clean Air Act, 42 U.S.C. Sec. 7413(a)(1) (1982), imposes no mandatory duties to investigate or make findings).
 
 
 30
 Notwithstanding the plain language of the statute, the SCWF court found it appropriate to turn to legislative history. The court relied on remarks of Senator Muskie, who was the primary sponsor of the 1971 Clean Water Amendments. In discussing the final Conference Report, Senator Muskie inserted a statement in the Congressional Record in which he asserted:
 
 
 31
 "[U]pon receipt of information giving the Administrator reason to believe that a violation has occurred, he has an affirmative duty to take the steps necessary to determine whether a violation has occurred, including to make his finding as expeditiously as practicable."
 
 
 32
 SCWF, supra, 457 F.Supp. at 130 (quoting 1 A Legislative History of the Water Pollution Control Act Amendments of 1972 174 (Committee Print 1973) ("Legislative History ")).
 
 
 33
 We agree with the SCWF court that Senator Muskie's reference to an "affirmative duty" could be interpreted to mean that the duty is "nondiscretionary" or "mandatory". We are mindful, however, that "[t]he remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." Chrysler Corp. v. Brown, 441 U.S. 281, 311 (1979). That admonition carries special weight here. Despite Senator Muskie's remark, Sec. 309(a)(3) on its face simply does not mandate that the Administrator conduct investigations or make findings. Moreover, as we show later in this opinion, Senator Muskie's remarks do not necessarily find support in the committee report to which he was referring. We decline to view those remarks as controlling on the issue of whether the statute imposes mandatory duties on the Administrator.
 
 
 34
 In addition to its failure to accord appropriate weight to the plain language of the statute, the district court also erred in completely ignoring a well established principle of judicial review:
 
 
 35
 "[The] view of the agency charged with administering the statute is entitled to considerable deference; and to sustain it we need not find that it is the only permissible construction that EPA might have adopted but only that EPA's understanding of a very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of EPA."
 
 
 36
 Chemical Manufacturers Ass'n, Inc. v. Natural Resources Defense Council, 470 U.S. 116, 120 (1985) (construing Sec. 301 of the FWPCA). Accord, United States v. Homestake Mining Co., 595 F.2d 421, 429 (8th Cir.1979) ("Since [EPA] is charged with administration of the Clean Water Act, [its] judgment as to the intendment of enforcement tools provided to it is entitled to deference.").
 
 
 37
 Under the circumstances present here, the district court erred in substituting its judgment for that of the Administrator. EPA's interpretation of Sec. 309(a)(3) not only finds adequate support in the statutory language, but also is consistent with the intent of Congress in enacting the FWPCA. The opening words of that statute declare that its objective "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. Sec. 1251(a) (1982). Under the district court's interpretation of Sec. 309(a)(3), EPA might have great difficulty in achieving that objective. EPA could be compelled to expend its limited resources investigating multitudinous complaints, irrespective of the magnitude of their environmental significance. As a result, EPA would be unable to investigate efficiently and effectively those complaints that EPA, in its expertise, considers to be the most egregious violations of the FWPCA. Only if the Administrator has discretion to allocate its own resources can a rational enforcement approach be achieved.
 
 
 38
 We hold that any duties imposed by Sec. 309(a)(3) to investigate or make findings are discretionary.
 
 
 39
 C. Duty to Enforce.
 
 
 40
 In holding that the Administrator has a mandatory duty to take enforcement action by either issuing a compliance order or commencing a civil action, the district court in the instant case again adopted the analysis of SCWF, supra, 457 F.Supp. 118, and rejected the contrary analysis of Sierra Club, supra, 557 F.2d 485. Dubois, supra, 646 F.Supp. at 745. We find the result reached in Sierra Club to be the more persuasive.
 
 
 41
 The court in SCWF placed great emphasis on Congress' use of the word "shall" in Sec. 309(a)(3). The court stated that "[s]tatutory language that an act 'shall' be carried out is generally regarded as mandatory." 457 F.Supp. at 130 (citing, among other cases, Anderson v. Yungkau, 329 U.S. 482, 485 (1947); Escoe v. Zerbst, 295 U.S. 490, 493 (1935)). The SCWF court correctly recognized, however, that "this rule of construction is not absolute". SCWF, supra, 457 F.Supp. at 130. The court nevertheless concluded that "shall" as used in Sec. 309(a)(3) imposes a mandatory enforcement duty on the Administrator. 457 F.Supp. at 131. The court based its interpretation on its view that "where the statute's purpose is the protection of public or private rights, as opposed to merely providing guidance for government officials, courts usually interpret 'shall' as imposing mandatory rather than directory duties." SCWF, supra, 457 F.Supp. at 130.
 
 
 42
 We recognize the general rules of construction stated by the SCWF court. We think, however, that that court incorrectly applied them to reach the conclusion that "shall" as employed in Sec. 309(a)(3) must be read as imposing a mandatory duty. The SCWF court, and the district court in the instant case, appear to have ignored the well established principle that agency decisions which refuse enforcement generally are unsuitable for judicial review. Heckler v. Chaney, 470 U.S. 821, 831 (1985). As the Chaney Court stated:
 
 
 43
 "[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing."
 
 
 44
 Chaney, supra, 470 U.S. at 831. The Court in Chaney relied upon this analysis in declining to interpret the phrase "shall be imprisoned" as mandatory language. Id. at 835. See also City of Seabrook, supra, 629 F.2d at 1374-75 n. 3 (reading "shall" in Clean Air Act enforcement provision as discretionary); Inmates of Attica v. Rockefeller, 477 F.2d 375, 381 (2d Cir.1973) (use of "shall" does not preclude exercise of prosecutorial discretion).
 
 
 45
 As is apparent, the two rules of construction referred to above might be said to lead to conflicting interpretations of Sec. 309(a)(3): under the rule that "shall" is language of command, it might appear that the district court correctly held that the Administrator has a mandatory duty of enforcement; but under the well established rule of Chaney, however, it is clear that "shall" should be construed to confer discretion on the Administrator. This conflict leads us again to the principle that an agency's interpretation of a statute which it administers is entitled to a high degree of judicial deference. In Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984), the Supreme Court outlined the general approach to be taken in determining whether an agency's interpretation of a statute is permissible:
 
 
 46
 "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."
 
 
 47
 Chevron, supra, 467 U.S. at 842-43 (footnotes omitted).
 
 
 48
 As we have indicated above, substantial arguments may be made--both ways--that the statutory language "shall" imposes, respectively discretionary or mandatory duties of enforcement. In such circumstances, resort to extrinsic aids to give effect to the intent of Congress is appropriate. United States v. St. Regis Paper Co., 355 F.2d 688, 695 (2d Cir.1966). Based on such extrinsic aids, we conclude that the Administrator's interpretation of Sec. 309(a)(3) is permissible.
 
 
 49
 The first extrinsic aid to which we turn is the structure of the FWPCA. That structure in two respects provides a reasonable basis for the Administrator's interpretation. First, Sec. 309(b) of the statute, to which Sec. 309(a)(3) refers, states in relevant part as follows:
 
 
 50
 "(b) The Administrator is authorized to commence a civil action for appropriate relief, ... for any violation for which he is authorized to issue a compliance order under subsection (a) of this section."
 
 
 51
 33 U.S.C. Sec. 1319(b) (emphasis added). Congress' use of the word "authorized" gives a discretionary flavor to Sec. 309. Had Congress intended Sec. 309(a)(3) to impose mandatory duties, Sec. 309(b) might have been drafted to state that the Administrator must commence a civil action for any FWPCA violation for which he is authorized to issue a compliance order under Sec. 309(a). Second, the citizen action provisions of Sec. 505 of the FWPCA provides support for the Administrator's view that his enforcement duties under Sec. 309(a)(3) are not mandatory. p Section 505(a)(1) provides in relevant part as follows:
 
 
 52
 "Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf--
 
 
 53
 (1) against any person ... who is alleged to be in violation of ... an effluent standard or limitation under this chapter".
 
 
 54
 33 U.S.C. Sec. 1365(a)(1). By creating a private right of action, Sec. 505(a)(1) suggests that, contrary to the holding of the district court in the instant case, the FWPCA was not intended to enable citizens to commandeer the federal enforcement machinery. Rather than "giv[ing] the 'little guy' access to enforcement power of the federal government", as the district court suggested, Dubois, supra, 646 F.Supp. at 744, the FWPCA allows citizens to supplement that power by bringing actions directly against violators.
 
 
 55
 The second extrinsic aid to which we turn is the legislative history of Sec. 309(a)(3). At worst, that history does not resolve the precise question at issue. Sierra Club, supra, 557 F.2d at 489. At best, it suggests that the Administrator's duty of enforcement is discretionary. In either event, we believe that the Administrator's interpretation of the statute should be upheld. See Chevron, supra, 467 U.S. at 842-43; EPA v. State Water Resources Control Board, 426 U.S. 200, 227 (1976).
 
 
 56
 The Committee Report leading to the enactment of Sec. 309 reflects disagreement between the two houses of Congress over whether the Administrator's enforcement duties were to be mandatory. The Report states in relevant part:
 
 
 57
 "Senate Bill
 
 
 58
 Section 309 requires the Administrator ... to issue a compliance order or to bring a civil action against the pollutor....
 
 
 59
 [T]he section requires him to either issue an order that requires immediate compliance or to bring a civil suit.... If such an abatement order is not complied with, the Administrator would initiate civil suit for appropriate relief, such as an injunction....
 
 House Amendment
 
 60
 Section 309 is basically the same as the Senate bill except that the Administrator is authorized rather than required to initiate civil actions or criminal proceedings....
 
 Conference substitute
 
 61
 This is the same as the House Amendment."
 
 
 62
 H.R. Conf.Rep. No. 92-1465, 92d Cong., 2d Sess. (1972) (emphasis added), reprinted in House Comm. on Pub. Works, 93rd Cong., 1st Sess., Laws of the United States Relating to Water Pollution Control and Environmental Quality (1973).
 
 
 63
 The Committee Report in our view is subject to two reasonable interpretations. Under the SCWF court's interpretation, Congress, in adopting the House version, "kept the duty to act mandatory, and made discretionary only the Administrator's method of acting." SCWF, supra, 457 F.Supp. at 131 (emphasis in original). Under the Administrator's interpretation, Congress intended to grant the Administrator discretion on whether to enforce at all. The question of which interpretation is correct is not resolved by other legislative materials. Despite the Committee Report's characterization of the Senate version of Sec. 309(a)(3), the Senate Report itself states that "the Administrator may issue an order to comply or go to court against the violator". S.Rep. No. 414, 92d Cong., 1st Sess. 10 (1971) (emphasis added), reprinted in 1972 U.S.Code Cong. & Ad.News 3668, 3677, and reprinted in 2 Legislative History at 1428. The Committee Report also is contradicted by another portion of the Senate Report:
 
 
 64
 "The Committee again, however, notes that the authority of the Federal Government should be used judiciously by the Administrator in those cases [which] deserve Federal action because of their national character, scope or seriousness.... It is clear that the Administrator is not to establish an enforcement bureaucracy but rather to reserve his authority for cases of paramount interest."
 
 
 65
 S.Rep. No. 414, supra, at 64 (emphasis added), reprinted in 1972 U.S.Code Cong. & Ad.News 3668, 3730, and reprinted in 2 Legislative History at 1482.
 
 
 66
 The Senate Report indicates that even the Senate version of Sec. 309(a)(3) did not require the Administrator to take enforcement action whenever a violation was found. Senator Muskie, however, characterized both versions of that section as follows:
 
 
 67
 "It is important to note, however, that the provisions requiring the Administrator to issue an abatement order whenever there is a violation were mandatory in both the Senate bill and the House amendment and the Conference agreement contemplates that the Administrator's duty to issue an abatement order remains a mandatory one...."
 
 
 68
 1 Legislative History at 174.
 
 
 69
 We believe that neither the language of Sec. 309(a)(3) nor its legislative history can be said to evince a clear intent of Congress as to whether the enforcement duties of the Administrator are mandatory or discretionary. Under such circumstances, the Administrator's interpretation is a permissible construction of Sec. 309(a)(3). That interpretation therefore must stand. Chevron, supra, 467 U.S. at 844-45.
 
 
 70
 We hold that the duties imposed on appellants by Sec. 309(a)(3) of the FWCPA are discretionary. The district court should have dismissed the FWCPA claim against appellants for lack of subject matter jurisdiction. In light of our holding, we find it neither necessary nor appropriate to reach appellants' second claim on appeal.
 
 III.
 To summarize:
 
 71
 An agency's interpretation of a statute which it is charged with administering is entitled to considerable judicial deference. The EPA Administrator has interpreted Sec. 309(a)(3) to impose only discretionary duties to investigate citizen complaints of FWPCA violations, to make a finding as to whether a violation has occurred, and, if the finding is positive, to take enforcement action. In light of the language of the statute and its legislative history, it is clear that the Administrator's interpretation is permissible. It therefore must be upheld.
 
 
 72
 We hold that the duties imposed on appellants by Sec. 309(a)(3) are discretionary. The district court should have dismissed the FWPCA claim against appellants for lack of subject matter jurisdiction. In light of our holding, we find it neither necessary nor appropriate to reach appellants' second claim on appeal.
 
 
 73
 We reverse the order of the district court denying appellants' motion to dismiss Count 8 of the complaint, granting summary judgment in favor of appellees, and granting to appellees mandatory injunctive relief. We remand the case to the district court with directions to enter a judgment vacating the mandatory injunction and dismissing, for lack of subject matter jurisdiction, Count 8, to the extent the district court's disposition of that count is appealed from.[3]
 
 
 74
 Reversed and remanded.
 
 
 
 *
 Of the Second Circuit, by designation
 
 
 [1]
 Appellees' complaint in the instant action also alleged that the EPA had failed to carry out certain allegedly mandatory duties under Secs. 210 and 308 of the FWPCA, 33 U.S.C. Secs. 1290, 1318 (1982). The district court found that the EPA had fulfilled its duties under Sec. 308. Appellees have not cross appealed from that ruling. The district court granted relief to appellees on their Sec. 210 claim. Appellants do not appeal from that ruling. We express no opinion on these claims; nor does our disposition of the instant appeal have any bearing on them
 
 
 [2]
 In an order entered May 28, 1986, the action was dismissed as against the State on Eleventh Amendment grounds
 
 
 [3]
 Appellees claim that, if the Administrator's duties under Sec. 309(a)(3) are discretionary, then his decision not to investigate or take enforcement action in the instant case was arbitrary, capricious, and an abuse of discretion, citing Kennecott Corp. v. EPA, 684 F.2d 1007 (D.C.Cir.1982). We hold that this claim is without merit. Assuming without deciding that a failure to take action under Sec. 309(a)(3) ever could constitute an abuse of discretion, appellees have advanced no cogent argument for reaching that conclusion here