**SAVE THE VALLEY, INC., Thomas Breitweiser and L. Jae Breitweiser, Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Carol Browner, Individually and as Administrator of the United States Environmental Protection Agency and David Ullrich, Individually and as Acting Regional Administrator of the United States Environmental Protection Agency, Region 5, Defendants.**

No. IP99–0058–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

March 8, 2000.

E. Scott Treadway, Lowe Gray Steele & Darko, Indianapolis, IN, for Plaintiffs.

Joshua E. Swift, U.S. Dept. of Justice, Environment Defense Section, Washington, DC, for Defendants.

### ENTRY DENYING DEFENDANTS' MOTION TO DISMISS

BARKER, Chief Judge.

Plaintiffs, Save the Valley, Inc. (STV), Thomas Breitweiser and L. Jae Breitweis-er (the Breitweisers), filed for injunctive relief on January 20, 1999 against Defendants, the United States Environmental Protection Agency (EPA) and EPA officials, Carol Browner and David Ullrich (individually and in their official capacities), under the citizen suit provision of the Clean Water Act (CWA)[1], 33 U.S.C. § 1365(a), and the Federal Mandamus Statute, 28 U.S.C. § 1361. Plaintiffs seek to compel the EPA to assume enforcement of National Pollutant Discharge Elimination System (NPDES) permits in the State of Indiana pursuant to 33 U.S.C. § 1319(a)(2), and to initiate proceedings (under 33 U.S.C. § 1342(c)(3)) to withdraw the State's authority to enforce permits. More specifically, Plaintiffs allege that the EPA Administrator must address Indiana's failure to require industrial hog farms (confined or concentrated animal feeding operations, "CAFOs") to acquire NPDES permits, in contravention of the CWA.

Pursuant to the January 28, 1999 Order of the Court and Rules 12(b)(1) and (b)(6), Defendants moved to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim.[2]

### Standard for Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(1), a district court must "accept the well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *United Transp. Union v.*

---

1. 33 U.S.C. § 1365 provides:

   **(a) Authorization; jurisdiction**

   Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—

   (1) [against persons alleged to be in violation of CWA standards], or

   (2) against the Administrator where there is an alleged failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

   The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties to ... order the Administrator to perform such act or duty....

2. Plaintiffs moved to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment. Because we find it unnecessary to our decision to examine documents outside the scope of the pleadings, this motion is DENIED.

*Gateway Western Ry. Co.,* 78 F.3d 1208, 1210 (7th Cir.1996).

On a motion to dismiss under Rule 12(b)(6), courts must examine the sufficiency of the plaintiff's complaint, not the merits of his case. *See Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583, 585 (7th Cir.1989). "Accordingly, the motion should not be granted unless it appears beyond a doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993) (citation omitted); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). When reviewing a motion to dismiss, the Court must consider all facts in the light most favorable to the non-moving party. *See National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir.1987). If the facts in the complaint or any reasonable inferences drawn therefrom support a claim for which relief can be granted, the Defendants' motion must be denied. *See Bowman v. City of Franklin,* 980 F.2d 1104, 1107 (7th Cir.1992).

### Clean Water Act

Under the Clean Water Act, all discharges of pollutants into the nation's waters are regulated by the NPDES permit program. *See* 33 U.S.C. § 1342. The CWA gives the EPA Administrator ultimate authority over issuance and enforcement of NPDES permits. States may apply for and receive EPA approval to administer the permit program governing discharges into waters within their jurisdictions. *See* 33 U.S.C. § 1342(b). If a State does not enforce CWA standards effectively, 33 U.S.C. § 1319(a)(2) empowers the EPA Administrator to assume enforcement of a State's permit program:

**(a) State enforcement; compliance orders**

(2) Whenever on the basis of any information available to him, the Administrator finds that violations of permit conditions or limitations as set forth in paragraph (1) of this subsection are so widespread that such violations appear to result from a failure of the State to enforce such permit conditions or limitations effectively, he shall so notify the State. If the Administrator finds such failure extends beyond the thirtieth day after such notice, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such conditions and limitations ... the Administrator shall enforce any permit condition with respect to any person—

(A) by issuing an order to comply with such condition or limitation, or

(B) by bringing a civil action under subsection (b) of this section.

In addition, the Administrator can withdraw approval of a State's administration of a permit program pursuant to 33 U.S.C. § 1342(c)(3):

**(c) Suspension of Federal program upon submission of State program; withdrawal of approval of State program**

(3) Whenever the Administrator determines after public hearing that a State is not administering a program approved under this section in accordance with requirements of this section, he shall so notify the State and, if appropriate

corrective action is not taken within a reasonable time, not to exceed ninety days, the Administrator shall withdraw approval of such program. The Administrator shall not withdraw approval of any such program unless he has first notified the State, and made public, in writing, the reasons for such withdrawal.

As noted above, the CWA permits citizens to enforce the Act, either by suing polluters directly or by bringing suit to force the Administrator to perform non-discretionary enforcement duties under the Act.

## Discussion

In resolving a motion to dismiss, we must accept the factual allegations of the complaint, liberally construed, as true. Therefore, despite the EPA's denials, we assume that the Administrator possesses actual knowledge of widespread violations of the CWA in Indiana resulting from the State's failure to enforce CWA-mandated permit conditions effectively or to require CAFOs to obtain permits.

Plaintiffs contend that since the Administrator knows of widespread failures in Indiana's NPDES permit enforcement, he must take steps to ensure that CWA standards will be met, as provided for in §§ 1319(a)(2) and 1342(c)(3). The EPA rejoins that the relevant provisions of §§ 1319 and 1342 set forth discretionary duties and that the Administrator cannot be compelled by a citizen suit to perform the acts therein; therefore the suit should be dismissed because this Court lacks subject matter jurisdiction over the matter and the Complaint fails to state a claim upon which relief can be granted.[3]

The language of 33 U.S.C. § 1319(a)(2) appears to impose a mandatory duty upon the Administrator to issue a compliance order to notify the State whenever he finds widespread problems in the enforcement of its NPDES permit program ("...the Administrator *shall* so notify the State.") (emphasis added). This notification initiates a process by which the public is informed if the State does not bring its program into compliance with CWA standards. Once public notice is given, the Administrator must enforce the permit conditions until the State remedies its problems. It is a well-accepted rule of statutory construction that a legislature's use of the word "shall" is generally interpreted as imposing a mandatory duty. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 34, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998); *Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947); *Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935); *see also In re National Mills, Inc.,* 133 F.2d 604, 607 (7th Cir.1943). We see no reason to disregard this principle as applied to the language at issue in this case.

The EPA cites opinions from two other circuits in which the courts held that similar language in a different provision of the statute, 33 U.S.C. § 1319(a)(3), creates a discretionary duty in the context of that provision. *See Dubois v. Thomas,* 820 F.2d 943 (8th Cir.1987); *Sierra Club v. Train,* 557 F.2d 485 (5th Cir.1977).[4] However, those decisions relied partly on the context and legislative history of that provision, which, as the Eighth Circuit noted in *Dubois,* is in itself ambiguous ("[t]he Committee Report in our view is subject to two reasonable interpretations."). Neither *Dubois* nor *Sierra Club* dealt with 1319(a)(*2* ), and the EPA has not demonstrated that (a)(3)'s legislative history pertaining to the Administrator's duties under § 1319(a)(3) should apply to the Administrator's duties under § 1319(a)(2).

To the contrary, the legislative history of § 1319(a)(2), as reflected in the Senate Report (No. 92–414) accompanying the Senate Bill (S.2770), indicates that the Administrator's duties under § 1319(a)(2) are mandatory: "Enforcement of violations of requirements under this Act should be based on relatively narrow fact situations requiring a minimum of discretionary deci-

---

**3.** Defendants also argue that Plaintiffs' complaint should be dismissed for failure to exhaust administrative remedies. Under 33 U.S.C. § 1365, Plaintiffs are not required to exhaust administrative remedies prior to filing suit.

**4.** 33 U.S.C. § 1319(a)(3) is similar to § 1319(a)(2) except that it deals with individual violations of the CWA. Citizens may bring suit against individual polluters who violate the CWA, but when violations are so widespread that they appear to result from a State's failure to enforce its permit program, a citizen's only recourse is to sue the Administrator to force him to perform his non-discretionary enforcement duties under the Act.

sion making or delay." The report also notes that "if the Federal, State, and local agencies fail to exercise their enforcement responsibility [under the CWA], the public is provided the right to seek vigorous enforcement action under the citizen suit provisions of section 505 [33 U.S.C. § 1365]." 1972 U.S.Code Cong. & Admin. News 3730.

The procedures outlined in § 1342(c)(3) call for a public hearing to take place if the State continues to fail in its enforcement of the NPDES permit program. Once again, the language appears to impose a mandatory duty on the Administrator to notify the State and take other appropriate actions after such hearing. We can think of no reason in support of a contrary interpretation of that provision.

The defendants argue that even if §§ 1319(a)(2) and 1342(c)(3) mandate the performance of certain duties by the EPA, the EPA must first make a "finding" under § 1319(a)(2) or a "determination" under § 1342(c)(3) before these duties are triggered. The defendants further assert that the EPA has the discretion to decide what constitutes a "finding." Defendants base this contention on the Eighth Circuit's decision in *Dubois*, in which that court held that the EPA's interpretation of the CWA was reasonable and entitled to considerable deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, Seventh Circuit opinions have held the deference to be afforded to agency interpretations under *Chevron* applies to the interpretations of legislative rules promulgated by an agency pursuant to a delegation of authority by Congress, not to agency interpretations of statutory terms. *See Doe v. Reivitz*, 830 F.2d 1441, 1444–46 (7th Cir.1987). Although administrative interpretations of statutory terms are given some deference, the Seventh Circuit has held that "in order for an agency interpretation to be granted deference, it must be consistent with the congressional purpose [behind the statute]." *See, e.g., Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). In *Scott v. City of Hammond*, the court refused to adopt an EPA-proposed interpretation of the CWA: "[W]e think that the CWA should be liberally construed to achieve its objectives— in this case to impose a duty on the EPA to establish [pollution controls] when the states have defaulted by refusal to act over a long period." 741 F.2d 992, 997–98 (7th Cir.1984).

The legislative history of the CWA shows that Congress intended that the public be permitted to seek enforcement of the CWA through citizen suits when state and federal agencies fail to exercise their enforcement responsibility. *See* 1972 U.S.Code Cong. & Admin. News 3730. The EPA's interpretation of the "finding" and "determination" requirements is not consistent with this congressional intent because such an interpretation would allow the Administrator to frustrate citizen enforcement of the CWA merely by refusing to issue a finding or determination. *See* William L. Andreen, *Beyond Words of Exhortation: The Congressional Prescription for Vigorous Federal Enforcement of the Clean Water Act*, 55 Geo. Wash. L.Rev. 202, 242–253 (1987). We find the reasoning of cases such as *South Carolina Wildlife Federation v. Alexander*, which relies on the principles of statutory interpretation discussed above to construe § 1319(a)(3), to be more persuasive than the EPA's rationale; accordingly, we read the CWA to impose a mandatory duty on the Administrator to make the requisite finding or determination when he becomes aware of such violations as articulated in § 1319(a)(2). *See South Carolina Wildlife Federation v. Alexander*, 457 F.Supp. 118, 129 (D.S.C.1978); *People of State of Illinois ex rel Scott v. Hoffman*, 425 F.Supp. 71, 77 (S.D.Ill.1977); *United States v. Phelps Dodge Corp.*, 391 F.Supp. 1181, 1183 (D.Ariz.1975); *see also Rivers Unlimited v. Costle*, 11 Env't. Rep. Cas. (BNA) 1681 (S.D.Ohio 1978) (holding § 1319(a)(2)

imposes mandatory duty); 61C Am.Jur.2d *Pollution Control* § 919 (1999) (citizen suit maintainable upon Administrator's alleged failure to perform non-discretionary duty to issue compliance order); Elaine K. Zipp, Annotation, *Citizen's action against Administrator of Environmental Protection Agency to compel performance of nondiscretionary duty under sec. 505(a)(2) of Federal Water Pollution Control Act Amendments of 1972 (33 U.S.C.A. 1365(a)(2))*, 57 A.L.R. Fed. 851 (1982).

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. Plaintiffs' Request for Hearing is DENIED as moot.