SIERRA CLUB, Plaintiff-Appellant,

v.

Russell TRAIN, Administrator of the Environmental Protection Agency, et al., Defendants-Appellees,

v.

STATE OF ALABAMA et al., Intervenors-Appellants.

No. 75–4028.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1977.

---

Edward Still, Birmingham, Ala., Ralph I. Knowles, University, Ala., for Sierra Club.

William J. Baxley, Atty. Gen., Henry H. Caddell, Asst. Atty. Gen., Montgomery, Ala., for State of Ala.

Wayman G. Sherrer, U. S. Atty., L. Scott Atkins, Asst. U. S. Atty., Birmingham, Ala., Eva R. Datz, Carl Strass, Peter R. Taft, Asst. Attys. Gen., Dept. of Justice, Washington, D. C., for Train.

Charles A. Powell, III, John E. Grenier, Birmingham, Ala., for Mitchell Neely.

Martin Ray, Tuscaloosa, Ala., for Abston Const. Co.

Before TUTTLE, WISDOM and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge:

The Sierra Club filed a "citizen's suit" under 33 U.S.C. § 1365 (Supp.1976) for a writ of mandamus directing Russell Train, Administrator of the Environmental Protection Agency (EPA), to enforce the Federal Water Pollution Control Act Amendments of 1972 (FWPCAA) as required by 33 U.S.C. § 1319(a)(3) (Supp.1976)[1] and for an injunction requiring Abston Construction Company, Inc. and Mitchell & Neely, Inc. to cease polluting Daniel Creek, and to restore it to its natural condition. A motion to dismiss defendant Train was filed, and the District Court ordered the dismissal, finding that although § 1365(a)(2)[2] does confer district court jurisdiction over a citizen's civil action against an EPA Administrator for failure to perform a nondiscretionary duty under FWPCAA, the EPA Administrator's enforcement duties under § 1319(a)(3) are discretionary and, therefore, jurisdiction over this suit was lacking. The Sierra Club appealed Train's dismissal, contending that the jurisdictional prerequisites specified by § 1365(a)(2) did exist since the word "shall" in § 1319(a)(3) imposes a mandatory duty on the EPA Administrator to issue an order requiring Abston Construction Company, Inc. and Mitchell & Neely, Inc. to comply with the FWPCAA or to bring suit against those corporations to effectuate compliance, neither of which was done.

I.

After the Sierra Club's suit was filed, the United States, at the request of the Secretary of the Army, commenced an action to enjoin the United States Pipe and Foundry Company, among others, including Abston Construction Company, Inc. and Mitchell & Neely, Inc., the two corporate defendants in the Sierra Club suit, from discharging refuse matter and fill material into the Daniel Creek and the Black Warrior River, allegedly in violation of the FWPCAA of 1972 and of the Rivers and Harbors Appropriation Act of 1899, and to compel restoration of the Daniel Creek and the Black Warrior River to their conditions existing prior to the illegal discharge. The District Court ordered the United States' claims based upon the FWPCAA be dismissed without prejudice to the EPA Administrator's rights.

Based on the filing of *United States v. United States Pipe and Foundry Company*, No. 76–P–0035–W (N.D.Ala., filed Jan. 12,

---

1. 33 U.S.C. § 1319(a)(3) provides:

Whenever on the basis of any information available to him the Administrator finds that any person is in violation of section 301, 302, 306, 307, or 308 of this Act, or is in violation of any permit condition or limitation implementing any of such sections in a permit issued under section 402 of this Act by him or by a State, he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

2. 33 U.S.C. § 1365(a)(2) provides:

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

* * * * * *

against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 309(d) of this Act.

1976), Train contends that the Sierra Club's appeal from his dismissal as a defendant is moot since all of the relief being sought by the Sierra Club in this suit is also being sought by the United States in *United States v. United States Pipe and Foundry.* Accordingly, a motion to dismiss this appeal has been filed. The mootness question must be disposed of prior to determining whether or not § 1319(a)(3) imposes a mandatory duty on the EPA Administrator, a matter of statutory construction and the substantive issue of this case.

We must decide whether a suit commenced by the United States against Abston Construction Company and Mitchell & Neely, Inc., among others, under the Rivers and Harbors Appropriation Act of 1899 to enjoin discharge of refuse into navigable waters and to compel restoration of those waters to their natural conditions moots the Sierra Club's appeal from the dismissal of Train as a defendant in a citizen's suit for a writ of mandamus commanding the EPA Administrator to issue a pollution abatement order against the Abston Construction Company and Mitchell & Neely, Inc.

 An appeal will be dismissed for mootness when a viable controversy between adverse parties susceptible to judicial resolution and relief no longer exists. *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Brownlow v. Schwartz,* 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923); *Allen v. Sisters of St. Joseph,* 5 Cir. 1974, 490 F.2d 81. *See generally* 6A Moore's Federal Practice ¶ 0.416[6], 57.13 (2d ed. 1974). The case between the Sierra Club and Train remains a live controversy susceptible to judicial resolution. A judicial decision on the merits will determine whether or not the EPA Administrator's duty under § 1319(a)(3) to issue a compliance order is mandatory. The filing of a suit by the United States to enjoin discharge of refuse does not satisfy the duty, if any, of the EPA Administrator to issue an order for compliance with the FWPCAA.

Filing of a suit by the United States to enjoin certain corporations from violating a Rivers and Harbors Appropriation Act provision which pronounces the discharge of refuse into navigable waters illegal does not moot the appeal from the dismissal of the EPA Administrator as a defendant in a suit to compel the EPA Administrator, as allegedly required by FWPCAA, to issue a pollution abatement order against two of the defendants in the United States' suit. The motion to dismiss Sierra's appeal as moot is denied.

II.

The substantive issue in this case is one of statutory construction, specifically whether § 1319(a)(3) imposes a discretionary or a non-discretionary duty on the EPA Administrator to issue an order requiring compliance with the FWPCAA. In statutory terms, the question is whether or not "shall" imposes a mandatory duty. If § 1319(a)(3) imposes a mandatory duty, then the District Court's dismissal of Train as a defendant for lack of subject matter jurisdiction was in error and must be reversed since § 1365(a)(2) confers jurisdiction on district courts over suits to compel the EPA Administrator to perform a mandatory duty; however, if the duty is discretionary, the District Court's dismissal was correct and should be affirmed.

The pertinent portions of FWPCAA, requiring construction, are set forth immediately following. Section 1319 provides:

> (a)(3) Whenever on the basis of any information available to him the Administrator finds that any person is in violation of . . . [FWPCAA], he shall issue an order requiring such person to comply with . . . [FWPCAA], or he shall bring a civil action in accordance with subsection (b) of this section.

> \* \* \* \* \* \*

> (b) The Administrator is authorized to commence a civil action for appropriate relief . . . for any violation for which he is authorized to issue a compliance order under subsection (a) of this section.

In interpreting statutes, a court's function "is to construe the language so as to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1939). The most persuasive evidence of Congressional intent is the wording of the statute. *Id.* Upon "superficial examination," § 1319(a)(3)'s statutory language "shall" appears to clearly mandate that § 1319(a)(3) imposes a non-discretionary duty on the EPA Administrator. Use of the word "shall" generally indicates a mandatory intent unless a convincing argument to the contrary is made. C. Sands, Sutherland's Statutory Construction § 25.04 (4th ed. 1973). Such an argument may be waged when extrinsic aids such as the purpose of the statute, *Escoe v. Zerbst*, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), the statute as a whole, or the legislative history indicates an intention that the statute be given a discretionary effect. *United States v. St. Regis Paper Co.*, 2 Cir. 1966, 355 F.2d 688. Although a salutary rule of statutory construction prohibits resort to extrinsic aids when a statute on its face appears to be clear and unambiguous, we heed a caution which has been repeated with specific reference to the FWPCAA of 1972 that "[W]hen aid to construction of the meaning of the words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *Exxon Corp. v. Train*, 5 Cir. 1977, 554 F.2d 1310 at p. 1322. In the instant case we think it imperative that we examine such aids to determine the intent of Congress.

The administrative agency's interpretation, along with the legislative history and the statute as a whole, are the aids which have been examined by this Court. The EPA, as the agency charged with enforcement of the FWPCAA, construes this statute as imposing a discretionary duty, and in absence of any cogent argument that the agency's construction is contrary to congressional intent, the agency's construction will be sustained. *EPA v. State Water Resources Control Bd.*, 426 U.S. 200, 227, 96 S.Ct. 2022, 2035, 48 L.Ed.2d 578, 595 (1976). The Sierra Club contends that the legislative history demonstrates the inconsistency of the EPA's construction with Congress' intent. Yet, the Congressional materials accompanying the FWPCAA do not contain a definitive resolution of the discretionary v. non-discretionary conflict.

Even during the legislative stage, dissension existed over whether § 1319(a)(3) created a discretionary or non-discretionary duty. The discord is evidenced by the distinction between the Senate version and the House version of the bill:

Senate Bill

Section 309 *requires* the Administrator . . . to issue a compliance order or to bring a civil suit against the pollutor.

\* \* \* \* \* \*

[T]he section *requires* him to either issue an order that requires immediate compliance or to bring a civil suit. . . If such an abatement order is not complied with, the Administrator would initiate a civil suit for appropriate relief, such as an injunction.

\* \* \* \* \* \*

House Amendment

Section 309 is basically the same as the Senate bill except that the Administrator is *authorized* rather than required to initiate civil actions or criminal proceedings.

. . .

Conference substitute

This is the same as the House Amendment.

H.R.Conf.Rep.No.92–1465, 92d Cong., 2d Sess. (1972), *reprinted* in House Comm. on Pub. Works, 93rd Cong., 1st Sess., Laws of the United States Relating to Water Pollution Control and Environmental Quality (1973).

The Sierra Club has contended that while the House amendment did remove the mandatory aspect of the EPA Administrator's duty to bring suit, the duty to issue a compliance order remained mandatory.

The Sierra Club theorizes that since the duty to issue an abatement order was mandatory in the Senate bill, since the House amendment spoke only to the Administrator's duty to commence suits, and since the Conference substitute incorporated the House amendment, this duty retained its mandatory character. Whether the Senate bill imposed a mandatory duty is, however, unclear. Although, according to one portion of Senate Report No. 92–414, "the section requires him to either issue an order that requires immediate compliance or to bring a civil suit," [1972] U.S.Code Cong. & Admin.News, pp. 3668, 3809, another portion of that same Senate Report states: "The task of enforcing provisions of the bill is assigned to the Administrator. . . . [T]he Administrator *may* issue an order to comply or go to court against the violator." [1972] U.S.Code Cong. & Admin.News, pp. 3668, 3677. The Discussion of Intent contained in the same Senate Report was quite explicit on the subject:

> The Committee again, however, notes that the authority of the Federal Government should be used judiciously by the Administrator in those cases [which] deserve Federal action because of their national character, scope, or seriousness. . . . It is clear that the Administrator is not to establish an enforcement bureaucracy but rather to reserve his authority for the cases of paramount interest.

[1972] U.S.Code Cong. & Admin.News, pp. 3668, 3730. The quoted portions demonstrate that the Senate Report cannot be relied upon as conclusive evidence that the Senate intended the § 1319(a)(3) duty to be mandatory. Because of this inconclusiveness, the blank spaces in the Sierra Club theory are apparent.

The Sierra Club further attempts to support its theory by claiming that § 1319(b) provides only that the initiation of a civil suit is a discretionary duty while § 1319(b) does not address the issue of whether or not the issuance of compliance order is a non-discretionary duty. An examination of the statute itself will reveal the fallacy of this purported logic. Section 1319 provides:

> (a)(3) Whenever on the basis of any information available to him the Administrator finds that any person is in violation of [the FWPCAA] . . . ., he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.
>
> \* \* \* \* \* \*
>
> (b) The Administrator is *authorized* to commence a civil action for appropriate relief, . . . for any violation for which he is *authorized* to issue a compliance order under subsection (a) of this section. (emphasis added).

A statute must be examined in light of the words and the structure of the act in order to determine the legislative intent and the true meaning of the statute. *Exxon Corp. v. Train*, 5 Cir. 1977, 554 F.2d 1310. Section 1319, especially subsection (b)'s statutory language "is authorized," clearly demonstrates the discretionary flavor of the statute.

Proper statutory construction requires more than linguistic examination and review of the rules of statutory construction. The interpretation should be reasonable, and where the result of one interpretation is unreasonable, while the result of another interpretation is logical, the latter should prevail. C. Sands, Sutherland's Statutory Construction § 45.12 (4th ed. 1973); *see Rosado v. Wyman*, 397 U.S. 397, 414–15, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *United States v. St. Regis Paper Co.*, 2 Cir. 1966, 355 F.2d 688.

Reason would dictate that the duties prescribed by § 1319(a)(3) be found discretionary. Since the Administrator *at his discretion* may bring suit, concluding the Administrator's duty to issue an abatement order to be mandatory would be unreasonable. For example, if the Administrator did issue an abatement order which was not complied with and the Administrator did not commence a suit for failure to comply, the empty gesture of issuing an abatement order would not foster the FWPCAA's goal of

pollution elimination. The citizen's alternative would be to file a suit to enforce the FWPCAA effluent limitation standards, but this right exists in the absence of the issuance of a compliance order by the Administrator. The citizen possesses the same right under the FWPCAA with or without issuance of a compliance order to bring suit against and receive damages from an alleged pollutor. In the quest to eliminate pollution a compliance order by the Administrator is unnecessary. On the other hand, the issuance of orders which the Administrator does not intend to pursue in court would be an exercise in practical futility, undermining the prestige and the effectiveness of the EPA.

We hold that the duties imposed by § 1319(a)(3) on the EPA Administrator are discretionary. Since § 1365(a)(2) only grants jurisdiction over citizen suits to force the EPA Administrator to perform a *mandatory* duty imposed by the FWPCAA, and since § 1319(a)(3) imposes a *discretionary* duty, the dismissal of Train as a defendant for lack of subject matter jurisdiction is

AFFIRMED.