Lawyer A. ADKINS, Plaintiff-Appellee,

v.

Robert HAMPTON et al., Defendants,

United States Postal Service,
Defendant-Appellant.

No. 76–4408.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1978.

Robert E. Hauberg, U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., for defendant-appellant.

James P. Cothren, Jackson, Miss., for plaintiff-appellee.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge:

The United States Postal Service appeals the granting of appellee Lawyer A. Adkins' motion for summary judgment in which the

Court set aside the discharge of Mr. Adkins and ordered his reinstatement with back pay and all other benefits from November 30, 1972. The Postal Service asserts three arguments for reversal of this decision: (1) the District Court erroneously concluded that the Postal Service violated its own regulation in discharging Adkins; (2) the Postal Service was never joined as a party to this action and the Court was without jurisdiction to grant the relief awarded;[1] (3) the Court erroneously rejected the defense of laches. We find arguments numbered two and three to be without merit. We agree, however, with the first point, with the result that we must reverse the District Court and hold that Mr. Adkins' dismissal was entirely valid.

The facts of this case pursue a long and winding path. Adkins had worked for the Postal Service since 1969. At the time of his dismissal in November 1972, he was a Distribution Clerk, Full Time, PS–5 in the Jackson, Mississippi, post office.

Postal employees assigned to the distribution of mail are required to qualify on ZIP code schemes in use in their installations (Methods Handbook M–5, § 241.212, R. 93). They are required to qualify on a minimum of one scheme exam yearly (Methods Handbook M–5, § 241.212, R. 93). On February 16, 1971, Adkins was assigned the Alabama ZIP code scheme and was given a period of time to qualify thereon. At that time approximately 15 of 34 other employees of the Jackson post office had qualified on the scheme, although it was seldom used in distributing mail in the Jackson post office.

Adkins was originally scheduled to take the exam on February 16, 1972, but he failed to appear for the test. As Postal Service regulations require, this failure to appear was treated as a failure of the exam. Adkins was sent a warning notice, and another date for the test, March 17, 1972, was set. Adkins again failed to ap-

---

1. While the Postal Service complains in its brief that an Amended Complaint was not filed making the Postal Service a party defendant, the District Court has nevertheless filed a Rule 10(e) certificate that the parties did agree to proceed without an amended complaint. Moreover, the District Court decided this in its summary judgment order, and the parties made no effort to have that corrected, if it were incorrect, prior to the filing of the appeal.

pear, which was also counted as a failure to pass. He was subsequently permitted to take the exam on April 20, but he did not pass it. His employment with the postal service was terminated on April 28, 1972.

Adkins appealed this termination to the Regional Civil Service Commission in Atlanta, which issued its opinion on September 11, 1972. The Regional Office found his dismissal procedurally defective for a number of stated reasons, and without considering the merits of the case, ordered his immediate reinstatement with back pay.

On October 31, 1972, he returned to work and reported to the personnel office where he was given a notice of proposed removal. The reasons stated for proposed removal were the two occasions when he did not report to the exams, which counted as failures, and the failure of the scheme exam when he finally did take it. The notice also stated that termination would take place no earlier than thirty days from his receipt of notice and that he had ten days to submit an answer.

On November 9 Adkins' representative, F. N. Burgess, president of the American Postal Workers Union in Jackson, responded in writing to this notice, requesting additional time for study. On that same day, however, Adkins requested to be allowed to take the exam on the Alabama scheme and was allowed to do so. Again, he failed it. On November 13 Adkins was notified of the decision by William G. Hanna, Officer in Charge of the Jackson post office, to discharge him effective November 30, 1972, for the reasons set forth in the notice of proposed removal, that is, failure to qualify on the Alabama scheme.

On November 15, 1972, fifteen days prior to Adkins' dismissal, the Jackson post office suspended the use of the Alabama scheme for a trial period of six weeks. Later it was abolished entirely.

Adkins' discharge was affirmed on appeal by the Atlanta Regional Office and then by the Board of Appeals and Review of the Civil Service Commission on June 11, 1973. Adkins filed suit in federal district court on February 3, 1974, against William G. Hanna, the Postmaster in Jackson; Keith R. Harvey, the chief personnel officer in the Jackson post office; and Robert Hampton, Jayne B. Spain, and L. J. Andolsek, Commissioners of the United States Civil Service Commission in Washington, D.C. Later Hanna and Harvey were dropped from the suit and the United States Postal Service was joined as a defendant.

The District Court reversed Adkins' dismissal, stating that since the Alabama scheme was not in use in the Jackson post office on the date of his removal, his dismissal for failure to qualify on this scheme was a violation of postal regulations.

■ "In cases involving the termination of federal employment, the scope of judicial review is limited to a determination of whether the administrative action has complied with the required procedural due process or whether the administrative action is arbitrary or capricious." *Smith v. United States Air Force*, 5 Cir. 1978, 566 F.2d 957, 958; *Thurman v. TVA*, 5 Cir. 1976, 533 F.2d 180, 183; *Harvey v. Nunlist*, 5 Cir. 1974, 499 F.2d 335, 336; *Dozier v. United States*, 5 Cir. 1973, 473 F.2d 866, 868. It is solely within the discretion of the administrative agency to determine whether the person's discharge will promote the efficiency of the service under the Veterans' Preference Act, 5 U.S.C. § 7512. *Dozier v. United States, supra; Mann v. Klassen*, 5 Cir. 1973, 480 F.2d 159, 161, *rehearing denied*, 481 F.2d 1403; *Chiriaco v. United States*, 5 Cir. 1964, 339 F.2d 588, 590; *Holman v. United States*, 1967, 383 F.2d 411, 181 Ct.Cl. 1.

■ We are unable to detect any abuse of procedural due process. We must now determine whether the action of the Postal Service in discharging Adkins was arbitrary and capricious because the agency violated its own regulation, § 222.1 of the M–5 Handbook, which prohibits requiring distribution clerks to take exams on schemes

they do not use in their regular assignments.[2]

In support of its ruling that the Postal Service's action was arbitrary and capricious the District Court cited a decision of the Civil Service Commission Appeals and Review Board, *In the Matter of Marshall S. Galex* (January 27, 1975). Appellee strongly urges this Court to give proper deference to the Agency decision in *Galex* and to apply the decision, as the District Court did, to this case.

■ Although we agree with appellee that great deference should be given to an agency's interpretation of a statute or regulation when the interpretation concerns matters within the agency's expertise,[3] we do not find the *Galex* ruling on the § 222.1 issue controlling in this case because the facts in the *Galex* case do not match up with those in Adkins' case.

Galex was assigned a distribution scheme and was scheduled to take his examination on that scheme on December 8, 1973. On December 1, 1973, he was assigned to an airmail facility where the assigned scheme was never used. He failed to report for the scheme examination on December 8 and was removed from service for that failure. On appeal the agency action was reversed on the basis of § 222.1 of the M–5 Handbook. The Postal Service was required to reinstate him.

■ In Adkins' case the original proposed notice of removal (which was found procedurally defective) was based on two failures to appear for the exam and one failure to pass the exam on the Alabama scheme, a test which was valid at that time in the Jackson post office and which had been given to approximately fifteen other employees. Additionally, the Alabama distribution scheme was occasionally used in the Jackson post office.[4] Because the first removal action against Adkins was found procedurally defective Adkins was reinstated, at which time he was again given a proposed removal notice based on these same three failures of the Alabama scheme examinations.

Courts have upheld the use of prior deficiencies, which were not originally considered on the merits because of procedural defects, in subsequent removal proceedings.[5] The Postal Service acted within its discretion when they gave Adkins a second

2. § 222.1 of Methods Handbook M–5: "Schemes, Assignments, Examinations" *Criteria for Assigning Examinations*
 Examinations should be assigned for one purpose only: to develop a well-qualified work force. Distributors shall not be required to take examinations on schemes they do not use in their regular assignments.

3. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Fredericks v. Kreps*, 5 Cir. 1978, 578 F.2d 555, 561; *Sierra Club v. Train*, 5 Cir. 1977, 557 F.2d 485, 489; *Transcontinental Bus System, Inc. v. C.A.B.*, 5 Cir. 1967, 383 F.2d 466, 480.

4. Although appellee notes that only two of the fifteen employees who had been tested on the Alabama scheme actually distributed mail according to that scheme, it should be noted that in § 263(b) of the M–5 Handbook reference is made to two types of scheme requirements: (1) essential scheme requirements which are "needed by the clerk to perform regularly for a full tour in the assignment" and (2) "*schemes needed by him to relieve other clerks or assist in the other distribution.*" [Emphasis added.]
 It is further noted in the regulation that "[s]chemes required by him to relieve other clerks or assist in other distribution on which he does not have a live record shall be assigned

according to 242.1 beginning with the date he meets the essential scheme requirements."

5. In *McGhee v. Johnson*, 10 Cir. 1969, 420 F.2d 445, *rehearing denied*, McGhee had been severed from his position as Postmaster after *two* removal proceedings, the first of which had been procedurally defective. The second charge of proposed removal substantially reiterated the first. The Civil Service Commission ruling, which was upheld by the Tenth Circuit, was that "use of deficiencies occurring more than two years before the proposed adverse action was not precluded by statute or regulation, and that the [original] appeal was not res judicata on the merits." 420 F.2d at 448.

In *Jenkins v. Macy*, 8 Cir. 1966, 357 F.2d 62, under similar circumstances the court affirmed the dismissal of a custodial laborer with the General Services Administration. The Court said that a veterans' preference eligible who was discharged for cause and who was reinstated due solely to the fact that he had not been given proper notice could not assert that his second removal for the same reason was not permitted under the res judicata doctrine or that it placed him in double jeopardy. 357 F.2d at 63, 67.

**1074**

notice of proposed removal based on the three failures which occurred while the Alabama scheme examination was being used by the Jackson post office to test people in the same position as Adkins.

Permitting Adkins to take the test one more time on November 9, 1972, merely gave him one more chance to enhance his position on appeal. Unfortunately, he failed it once again. It should be noted also that this testing and failure occurred six days before the Jackson post office received the November 15 letter informing them of the temporary suspension of the use of the Alabama scheme. Additionally, Adkins' letter of decision to discharge was dated November 13, two days before the November 15 notice. The *Galex* decision clearly does not apply to these facts: Adkins was discharged for failure to qualify on the scheme at a time when it was validly required of him.

 Because we agree that a reviewing court should give great weight to an interpretation of a statute by an agency charged with the statute's enforcement and because we find the removal action was not unreasonable, arbitrary, or capricious, we will defer to the opinion of the Civil Service Commission Appeals and Review Board which upheld the discharge of Adkins for failure to pass the scheme exam. The decision of the District Court is

REVERSED.