CROSS TIMBERS CONCERNED
CITIZENS, Plaintiffs,

v.

Jane SAGINAW, Regional Administrator, United States Environmental Protection Agency, Region VI; and Paul Johnson, Chief, United States Department of Agriculture, Natural Resources Conservation Service, Defendants.

No. CIV. 3–97–CV–1564–H.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 16, 1997.

Boyd Waggoner and Clint D. Van Treese, Waggoner & Malouf, Dallas, TX, for Plaintiffs.

Paula M. Billingsley, Assistant U.S. Attorney, Dallas, TX, Daniel M. Flores and Claire E. Douthit, Environment & Natural Resource Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Defendants' Partial Motion to Dismiss and Motion for More Definite Statement, filed September 17, 1997; Plaintiff's Response, filed October 6, 1997; Defendants' Reply, filed October 21, 1997; and Plaintiff's Response, filed November 10, 1997.

The Court held oral argument on these motions on November 26, 1997. After consideration of the pleadings on file and the argument of counsel, the Court finds that Defendants' partial motion to dismiss should be granted, and the motion for more definite statement should be denied.

## I. BACKGROUND

Plaintiff, a citizens' group, seeks declaratory and injunctive relief for alleged action and inaction of the United States Environmental Protection Agency ("EPA") and the United States Department of Agriculture, Natural Resource Conservation Service ("NRCS"). Plaintiff alleges violations of the Clean Water Act ("CWA") and the National Environmental Policy Act ("NEPA") with regard to certain large feedlots, called Concentrated Animal Feeding Operations ("CAFOs").[1] In its Complaint, filed June 30, 1997, Plaintiff asserts the following claims: Count I against the EPA for violations of the CWA and NEPA; and Count II against NRCS for violations of the CWA and NEPA.

The Clean Water Act establishes a comprehensive program to clean up the nation's water systems, in part through reduction and eventual elimination of the discharge of pollutants into those waters. *See* 33 U.S.C. § 1251(a). The CWA divides sources of water pollution into two categories: (1) "point source" pollution, and (2) "nonpoint source" pollution. Point source pollution is characterized by a discrete source, such as factories and other sources with "end of pipe" discharges. Nonpoint source pollution is not defined, but has been construed to mean any source "not associated with a discrete conveyance ...includ[ing] runoff from fields and forests." *Oregon Natural Resources Council v. Lyng,* 882 F.2d 1417, 1424 n. 8 (9th Cir. 1989), *as modified,* 899 F.2d 1565 (9th Cir. 1990).

In this case, Plaintiff complains of a Texas "Strategy" devised by the Tarleton Institute for Applied Environmental Research ("TIAER") that allegedly addresses Concentrated Animal Feeding Operations, or CAFOs, as nonpoint pollution sources.[2] Plaintiff believes that the Strategy violates the CWA, and that CAFOs should continue to be regulated by the EPA as point sources of pollution. Plaintiff therefore sues the EPA for failing to take action against the Strategy and by allegedly condoning it with grants and otherwise.

As a general matter, Plaintiff complains that the EPA has attempted to avoid its obligation to regulate CAFOs as point

---

1. CAFOs are defined as large feed lots at which animals, such as cattle, hogs, or poultry, are confined for 45 days or more during a 12–month period, and at which crops and vegetation cannot grow. 40 C.F.R. § 122.23(b)(1), (b)(3).

2. Plaintiff alleges in its Complaint, but does not argue in the response to the present motion, that the Strategy was incorporated into "Senate Bill 503" in 1993 and thereafter became a part of the Texas Water Code. No citation is provided.

sources in the past and has been prevented from doing so only by the courts. *E.g., Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055 (5th Cir.1991); *Natural Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369 (D.C.Cir. 1977) (*"Costle"*). Notwithstanding Plaintiff's view in that regard, it is undisputed that the EPA has issued effluent limitations standards for CAFOs as point sources. It is also undisputed that pursuant to those standards, the EPA issued a General Permit on February 8, 1993, for CAFOs in Texas and several other states ("General Permit"). The General Permit governs all Texas CAFO operations as point sources under the effluent standards the EPA established. The General Permit is intertwined with the EPA's issuance of a Finding of No Significant Impact ("FONSI") with regard to the CAFOs. The FONSI is based in part on a "mitigating circumstance" that the permit require a "no discharge" standard. Plaintiff alleges, among other things, that the EPA has not enforced the "no discharge" standard, and that the Strategy does not require Texas to enforce it.

With regard to Defendant NRCS, Plaintiff sues primarily for allegedly providing funding for the Lake Waco/Bosque River Watershed Quality Initiative ("the Initiative"). The Initiative allegedly aims to develop model legislation to implement plans similar to the Strategy for other states. According to Plaintiff, the NRCS has determined that the Initiative falls within the Categorical Exclusion from NEPA regulations. Plaintiff alleges that such an Exclusion applies only to those actions found not to have a significant impact on the human environment. Plaintiff alleges further that the EPA's FONSI in that regard is incorrect and useless because it is based on the "no discharge" permit standard that is not enforced.

Under Rule 12(b)(1), Federal Rules of Civil Procedure, Defendants move that the Court dismiss Plaintiff's CWA claims against EPA and NRCS for lack of subject matter jurisdiction. Under Rule 12(b)(6), Defendants move to dismiss Plaintiff's NEPA claims for failure to state a cause of action. Under Rule 12(e), Federal Rules of Civil Procedure, Defendants move for a more definite state-

ment for any cause of action not dismissed by the Court.

## II. CLEAN WATER ACT

Defendants argue that the Court has no jurisdiction to hear the claims brought against the EPA or NRCS under the Clean Water Act. *See* Fed.R.Civ.P. 12(b)(1). In paragraphs 1 and 36 of the Complaint, Plaintiff asserts federal question jurisdiction for those claims under the following statutes: (1) the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(1) & (a)(2); (2) the Administrative Procedure Act ("APA"), 5 U.S.C. § 703; and (3) the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

### A. *Standard for Dismissal Under Rule 12(b)(1)*

■ To defend a motion for dismissal under Rule 12(b)(1), the plaintiff has the burden of demonstrating subject matter jurisdiction. *Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir.1995), *cert. denied,* 516 U.S. 1071, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 n.48 (1980 & Supp.1997). The question of subject matter jurisdiction is an issue for the court. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

■ Under Fifth Circuit law, a court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications Inc.,* 117 F.3d 900, 904 (5th Cir.1997); *Williamson,* 645 F.2d at 413. Thus, the existence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* The Court's jurisdictional findings of fact are reviewed for clear error. *Robinson,* 117 F.3d at 904.

### B. *Clean Water Act ("CWA")*

Plaintiff first claims that jurisdiction for its Clean Water Act claims arises directly from

within that statute. The jurisdictional provision for "citizen suits" brought under the CWA follows:

> [A]ny citizen may commence a civil action on his own behalf—
>
> (1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitations under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty which is not discretionary with the Administrator.[3]

33 U.S.C. § 1365(a) ("Section 1365(a)," "Subsection (a)(1)," and "Subsection (a)(2)"). The Court will examine each subsection separately.

1. *Subsection (a)(1)*

For jurisdiction to exist for a CWA citizen suit brought under Subsection (a)(1), a defendant must be "in violation" of an EPA effluent standard or EPA order. In this case, Defendants argue that Plaintiff does not allege a "violation" but rather a "maladministration." Because neither Defendant is itself accused of polluting United States waters in violation of the CWA, Defendants contend that jurisdiction cannot lie under subsection (a)(1).

The United States Supreme Court has recently decided that issue in another context. *See Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1162–63, 137 L.Ed.2d 281 (1997). In *Bennett,* the Court interpreted a substantially similar "citizen suit" provision of the Endangered Species Act ("ESA") in an action brought against the ESA's administering agency. *See id.* The relevant passage provides: "[A]ny person may commence a civil suit on his own behalf ... to enjoin any person, including the United States and any other governmental instrumentality or agen-

cy (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be *in violation of* any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g) (emphasis added). The *Bennett* Court held that federal jurisdiction is not invoked by that provision for a citizen suit brought against the agency as administrator of the statute. *Id.* ("[T]he term 'violation' does not include the Secretary's failure to perform his duties as administrator of the ESA.").

In so holding, the Supreme Court reasoned that any other interpretation would be incompatible with a second jurisdictional subsection of the ESA, which expressly authorizes suit against the administering agency, but only to compel performance of a nondiscretionary function. *See id.* at 1162. That reasoning is directly applicable here as well: subsection (a)(2), discussed below, is a parallel provision of the CWA and would be essentially nullified by application of subsection (a)(1) to the EPA. *See United States v. Menasche,* 348 U.S. 528, 538, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (originating the "cardinal principle of statutory construction [that it] give effect, if possible, to every clause and word of a statute ... rather than to emasculate an entire section").

Moreover, the *Bennett* Court noted that use of the word "violation" occurs elsewhere in the ESA—as it does in the CWA—in contexts "most unlikely" to refer to the agency itself. *Bennett,* 520 U.S. at ——, 117 S.Ct. at 1162. Similarly germane here is the *Bennett* Court's concern that allowing the term "violation" to include agency administration errors would effect a wholesale abrogation of the Administrative Procedure Act's "final agency action" requirement. *Id.* at 1166–67. The analysis supporting the *Bennett* decision is equally applicable to the nearly identical "citizen suit" jurisdictional provision of the CWA.

▮▮▮ Accordingly, the Court agrees with EPA that the *Bennett* decision should be followed here. Federal jurisdiction does not arise under section 1365(a)(1) of Title 33,

---

[3.] Although Plaintiff's Complaint did not mention subsection (a)(1) in the section on jurisdiction, it clearly relied on that subsection elsewhere in the Complaint as a basis for jurisdiction.

United States Code, for a citizen suit against EPA as administrator of the Clean Water Act.

### 2. *Jurisdiction Under Subsection (a)(2)*

Plaintiff asserts jurisdiction next under subsection (a)(2) of the CWA citizen suit provision. *See* 33 U.S.C. § 1365(a)(2). Under that subsection, a district court has jurisdiction over a "citizen suit" against the EPA only if the plaintiff has alleged that the EPA has a specific duty that is not discretionary with the agency. *Sierra Club v. Train,* 557 F.2d 485, 491 (5th Cir.1977). In the absence of a contrary statutory demand, the EPA should be afforded broad prosecutorial discretion. *Id.* The central question for application of this jurisdictional section is whether or not Plaintiff's claim is based on a mandatory duty of the EPA to act.

Defendants claim that absent a "date-certain" deadline for an agency obligation under the CWA, the duty is purely discretionary. *See Sierra Club v. Thomas,* 828 F.2d 783, 791 (D.C.Cir.1987) ("In order to impose a clear-cut nondiscretionary duty, we believe that a duty of timeliness must categorically mandat[e] that all specified action be taken by a date-certain deadline."). In *Sierra Club v. Thomas,* the D.C. Circuit interpreted the Clean Air Act to decide that congressional intent limits citizen suits to those in which the court is able to determine readily whether a violation occurred. *See id.* at 791. In the absence of an ascertainable deadline, the D.C. Circuit reasoned, it may be impossible to conclude that Congress accords an action such high priority as to impose upon the agency a "categorical mandate" that deprives it of all discretion over the timing of its work. *Id.* Defendants belabor, but quite accurately, that Plaintiff's claim is not related to any duty for which the CWA provides a date-certain deadline.

The Court is inclined to reject Defendants' broad reading of the D.C. Circuit's opinion in *Sierra Club v. Thomas.* The D.C. Circuit itself has indicated that the question remains open whether a date-certain deadline is required for a mandatory EPA duty to arise under the Clean Water Act. *See National Wildlife Federation v. Browner,* 127 F.3d 1126, 1128 (D.C.Cir.1997) (declining to decide "whether, as EPA contends, a 'readily ascertainable deadline' for agency action is a necessary jurisdictional basis for a citizen suit under the [Clean Water] Act"). Furthermore, other courts have examined the issue of CWA mandatory duty without referring to a date-related test. *See, e.g., Browner,* 127 F.3d at 1128; *Miccosukee Tribe of Indians v. United States Environmental Protection Agency,* 105 F.3d 599, 602 (11th Cir.1997) (and cases cited therein). Finally, this Circuit's relevant jurisprudence, though it predates *Sierra Club v. Thomas,* examines the question from a different standpoint of analysis. *See, e.g., Sierra Club v. Train,* 557 F.2d at 491. The Court need not finally decide applicability of EPA's "date-certain" test to the CWA, however, because no mandatory EPA duty arises by any analysis under the circumstances of this case.

Plaintiff baldly asserts, without legal argument or citation of authority, virtually every subsection in the CWA to be a nondiscretionary EPA obligation. Only two sections bear closer examination as a possible nondiscretionary obligation under which jurisdiction might arguably arise her.

Section 1311(e) of Title 33, provides: "Effluent limitations established pursuant to this section ... *shall be applied to all point sources* of discharge of pollutants in accordance with the provisions of this chapter." 33 U.S.C. § 1311(e) (emphasis added). Under this subsection, EPA must apply effluent limitations to CAFOs as point sources. *Carr,* 931 F.2d at 1059; *see Costle,* 568 F.2d at 1376. To exercise that duty, however, EPA is authorized only to require that CAFOs obtain a National Pollutant Discharge Elimination System ("NPDES") permit to operate within the effluent standards, and then to enforce that permit under section 1319(a), discussed below. *Id.; see Carr,* 931 F.2d at 1059 ("An NPDES permit serves to transform generally applicable effluent limitations and other standards ... into the obligations (including a timetable for compliance) of the individual discharger .... ").

■ Here, Plaintiff does not and cannot assert that EPA has violated that duty. It is

undisputed that EPA long ago established effluent guidelines for CAFOs as point sources and applied those guidelines to CA-FOs in Texas through the General CAFO Permit issued in 1993. Nowhere does the subsection suggest that the EPA has a mandatory duty to perform the specific action of which Plaintiff complains—to oppose a state's environmental "Strategy" or legislation that does not comply with the standard and permit that EPA has already mandated under the CWA. Accordingly, section 1311(e), whether or not it may impose a mandatory duty for the EPA to take action under other circumstances, does not impose a mandatory duty for the EPA to take the action that Plaintiff here attempts to compel.

A second colorable statutory source of mandatory duty is section 1313 of Title 33. Under that section and its corresponding regulations, the Eleventh Circuit has held that EPA "has a mandatory duty to review any new or revised state water quality standards." *Miccosukee Tribe of Indians,* 105 F.3d at 602 (citing *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency,* 16 F.3d 1395 (4th Cir.1993)). Each state is required under this section to submit any law affecting water quality that constitutes a change in the state's previous policy. *See* 33 U.S.C. § 1313(c)(2)(A). The EPA then reviews the state's submission and affirmatively approves or disapproves it. *Id.* at 602. Regardless whether a state properly submits a new law for approval to EPA, however, EPA retains a mandatory duty under Eleventh Circuit law to review new or revised standards. *See id.* at 602–03 (reversing the district court for failure to conduct an independent review whether a new Florida law constituted a change in water quality standards).

█ Assuming without deciding that the Fifth Circuit would follow the Eleventh Circuit on this issue, the Court still finds no jurisdiction. In the first place, Plaintiff neither pleads nor argues that the Strategy represents a change in Texas water-quality law. Even if the pleadings might be very liberally so construed, Plaintiff neither pleads nor argues whether the State of Texas has submitted legislation based on the Strategy to the EPA for review; whether the EPA has determined that a change of state law has occurred; or, particularly in the absence of state submission, whether Plaintiff has petitioned for and obtained an official agency ruling with regard to those matters. Under those circumstances, and for the reasons set out elsewhere in this opinion, the question is not yet ripe for judicial review. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (holding that the ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties"). The Court finds that no significant hardship is imposed on Plaintiff by deferral of adjudication until EPA has had the opportunity to accomplish its duties and Plaintiff has had the opportunity to clarify and finalize its case if EPA fails. *See National Ass'n of Reg. Util. Comm'rs v. United States Dept. of Energy,* 851 F.2d 1424, 1429 (D.C.Cir.1988) (holding that for an institutional interest in deferral to be outweighed, postponement must impose a hardship on the complaining party that is immediate, direct, and significant). Even if jurisdiction might arise at a later date under subsection 1313, therefore, the case is prematurely before the Court.

█ It appears to the Court that this lawsuit against the EPA, however couched, is in effect an action for enforcement. The relief Plaintiff seeks is to compel EPA to enforce the General Permit of 1993 and the "no discharge" standard with regard to CAFOs. *See* 33 U.S.C. § 1319(a) ("Whenever … the Administrator finds that any person is in violation of any permit condition or limitation … he shall issue an order requiring such person to comply with such section or requirement…."). Under long-standing Fifth Circuit law, however, such enforcement decisions are strictly discretionary with the EPA. *E.g., Sierra Club v. Train,* 557 F.2d at 491. As the present lawsuit is formulated, its gravamen is foreclosed in this Circuit.

The Court concludes that no mandatory EPA duty arises from the CWA to perform the specific actions for which Plaintiff requests declaratory and injunctive relief. Plaintiff cannot rely on the Clean Water Act to provide jurisdiction for its claims.

### C. APA

Plaintiff attempts next to invoke jurisdiction by way of the Administrative Procedure Act ("APA"). Under the APA, the Court may review a final agency action to determine whether it is "arbitrary and capricious." 5 U.S.C. § 706(2). In addition, the Court may review an agency action unlawfully withheld or unreasonably delayed. See 5 U.S.C. § 706(1). For either standard, judicial review must be based on the administrative record already in existence. Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

■ A court may not review agency action for arbitrariness or capriciousness under the APA unless it constitutes "final agency action." 5 U.S.C. § 704. Final agency action under the CWA can be, for example, denial of a permit application. See United States v. Marine Shale Processors, 81 F.3d 1329, 1334 (5th Cir.1996). The only final agency actions alleged in this case are EPA's issuance of effluent standards for point sources and issuance of the CAFO General Permit. Plaintiff, however, does not oppose, those actions; indeed, Plaintiff's basic claim is that they are correct, controlling, and being undermined. Because Plaintiff cannot point to any final agency action of which it complains, this Court is precluded from review. See Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1385–86 (5th Cir.1989).

■ In the current factual posture of this case, Plaintiff's claim more properly arises under the standard of review for action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). Such an action, however, will not lie to the extent that agency action is committed to agency discretion by law. 5

U.S.C. § 701 (so requiring); see Heckler v. Chaney, 470 U.S. 821, 828, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) ("[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."). Here, as discussed in the prior section on CWA liability, the Court would have no possible means of evaluating EPA's inaction, because Plaintiff has identified no ripened duty of the EPA to act. See Madison–Hughes v. Shalala, 80 F.3d 1121, 1124–25 (6th Cir.1996) (dismissing because defendant HHS had no mandatory legal obligation to perform role under Title VII on which plaintiff sued).

■ In any event, Plaintiffs have failed to pursue their available administrative remedies. See NRDC v. Thomas, 845 F.2d at 1091, 1093 ("General principles of agency law require . . . a chance for the agency to deal with [the] specific question and make an adequate record thereon.") (citation omitted). Plaintiff does not plead that it has petitioned the EPA for action; rather, it alleges only informational correspondence.[4] See National Wildlife Federation v. Browner, 1996 WL 601451, *4–5 (D.D.C.1996) (finding lack of exhaustion where plaintiffs merely "provid[ed] EPA with their general views on EPA's authority"), aff'd, 127 F.3d 1126 (D.C.Cir.1997). Essentially, the Court has no agency record from which to conduct an APA review. The APA does not provide a jurisdictional basis for Plaintiff's claim against the EPA.

### D. Declaratory Judgment Act

Finally, Plaintiff asserts federal jurisdiction over its CWA claims against the EPA under the Declaratory Judgment Act. See 28 U.S.C. §§ 2201–02. The Declaratory Judgment Act does not of itself grant federal jurisdiction. Appling County v. Municipal Elec. Auth., 621 F.2d 1301, 1303 (5th Cir.), cert. denied, 449 U.S. 1015, 101 S.Ct. 574, 66

---

4. Plaintiff refers only to a copy of a letter it sent to the EPA and a copy of a letter it received in return from William B. Hathaway, director of EPA Region VI (Dallas), water quality protection division. Plaintiff's letter sought and disseminat-ed information. No ruling or action—other than a possible meeting with the Administrator to discuss the Strategy—is requested or even mentioned.

L.Ed.2d 474 (1980). Accordingly, it cannot serve as a basis for jurisdiction over Plaintiff's claims against the EPA.

For the reasons above, this Court does not have subject matter jurisdiction over Plaintiff's claim that the EPA has violated the Clean Water Act. To the extent that Plaintiff alleges a claim against Defendant NRCS under the Clean Water Act in Count II of the Complaint, the same analysis applies.[5]

## III. NATIONAL ENVIRONMENTAL POLICY ACT

Defendant EPA moves to dismiss the remainder of Count I against the EPA for failure to state a claim for which relief may be granted. Fed.R.Civ.P. 12(b)(6). For the reasons that follow, the motion is granted.

### A. Standard for Dismissal Under Rule 12(b)(6)

In considering a motion to dismiss a complaint for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inferences to be drawn from them. *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994). The Court may not look beyond the pleadings. *See Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 935 (5th Cir.1988).

Dismissal for failure to state a claim is not favored by the law. *Id.* at 926. A Plaintiff's complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."); *Adolph v. Federal Emergency Management Agency*, 854 F.2d 732, 735 (5th Cir.1988) (holding that a court may dismiss a claim under 12(b)(6) only if "it appears to a certainty that no relief can be granted under any set of facts provable in support of its allegations or if the allegations, accepted as true, do not present a claim upon which relief legally can be obtained."). However, "there are times when a court *should* exercise its power to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Mahone,* 836 F.2d at 927 (emphasis in original).

### B. NEPA Claim against EPA

In the remainder of Count I of the Complaint, Plaintiff alleges a claim against the EPA under the National Environmental Policy Act ("NEPA"). NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") for "proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Regulations promulgated under NEPA require agencies to publish a Record of Decision for action based on an EIS, and, among other things, to condition funding on any "mitigation" required in an EIS. 40 C.F.R. §§ 1505.2, 1506.

Plaintiff's NEPA claim is brought in part for EPA's alleged failure to assure the applicability of the "no discharge" performance standard to CAFOs. *See* 40 C.F.R. §§ 1500.3, 151.2, 1505.3. The "no discharge" standard is a "mitigating condition" supporting the General Permit of 1993. In addition to Plaintiff's claim that the EPA is allowing Texas CAFOs to ignore the "no discharge" standard, Plaintiff also alleges that the EPA has been involved with funding that allegedly supports such action. Even taking all of these claims as true, the Court finds that Plaintiff has failed to state a NEPA cause of action because EPA is exempt from such a claim.

Section 511(c) of the Clean Water Act provides:

Except for the provision of Federal financial assistance for the purpose of assisting the construction of publicly owned treatment works ... and the issuance of a permit under section 1342 of this title for

---

5. Plaintiff is not left without remedy under the Clean Water Act. In addition to its administrative remedies not yet pursued, Plaintiff may, of course, bring a citizen suit against any CAFO that is in violation of the General Permit. *See Carr,* 931 F.2d at 1058.

the discharge of any pollutant by a new source as defined in section 1316 of this title, *no action of the Administrator taken pursuant to this chapter shall be deemed a major Federal action significantly affecting the quality of the human environment* within the meaning of the National Environmental Policy Act of 1969.

33 U.S.C. § 1371(c)(1) (emphasis added).

Defendant EPA alleges that under this provision of the Clean Water Act, EPA is exempt from any NEPA liability whatsoever, except when it funds publicly owned treatment plants or when it issues permits for new sources of pollution. It is undisputed that this case involves neither activity. The question is whether the statutory exemption is sufficiently broad to cover the sections of NEPA and its regulations at issue here.

Under the bare language of the exemption, EPA action is not expressly exempted from obligation under NEPA in its entirety; rather, EPA action is simply not to be regarded as "major Federal action significantly affecting the quality of the human environment." The quoted language refers directly to only one obligation under NEPA: preparation of an Environmental Impact Statement. 42 U.S.C. § 4332(C) (1988). Accordingly, EPA has been held to be exempt from preparing such statements regarding permits for old sources of pollution. *See, e.g., Pacific Legal Found. v. Quarles,* 440 F.Supp. 316, 320–21 & n. 2 (C.D.Cal.1977), *aff'd sub nom., Kilroy v. Quarles,* 614 F.2d 225 (9th Cir.), *cert. denied,* 449 U.S. 825, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980). Although the courts have stopped short of holding the exemption to provide EPA with complete NEPA immunity under every possible circumstance, they have universally relied on legislative intent to adopt a much broader application than the bare language would suggest. *See, e.g., Municipality of Anchorage v. United States,* 980 F.2d 1320, 1328–29 (9th Cir.1992) (holding that the EPA is also exempt from the requirement to "consider alternatives" under section NEPA 102(e)); *see also, e.g., Webb v. Gorsuch,* 699 F.2d 157, 161 (4th Cir.1983).

Furthermore, many courts in dicta have ascribed to a position of total exemption. *See, e.g. Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency,* 859 F.2d 156, 167 (C.A.D.C. 1988) ("In the area of water quality regulation, § 511(c) of the CWA ... makes clear that the provision of federal financial assistance for the construction of publicly owned treatment works and the issuance of discharge permits to new sources are the only actions taken by [EPA] under the CWA that will trigger a NEPA duty."); *Portland Cement Ass'n v. Ruckelshaus,* 486 F.2d 375, 379–87 (D.C.Cir.1973) (expressing doubt whether NEPA applies at all to environmental agencies, especially EPA), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974).

 In this case, Plaintiff pleads no statutory duty under NEPA; instead, its claim arises only under certain regulations promulgated pursuant to NEPA. *See* 40 C.F.R. § 1500 *et seq.* Specifically, Plaintiff asks the Court to compel EPA to abide by section 1505.3, which provides, among other things, that "[m]itigation ... and other conditions established in the environmental impact statement ... shall be implemented by the lead agency."[6] 40 C.F.R. § 1505.3. Given that EPA is entirely exempt from obligation under NEPA for the preparation of an impact statement, it is not too far a stretch to hold that the agency is similarly exempt from NEPA obligations predicated on regulations implementing such impact statements. Under the clear trend of the federal courts, section 511(c) of the Clean Water Act is sufficiently broad to exempt EPA from liability under the NEPA regulations at issue here. Accordingly, Plaintiff has failed to state a claim against EPA under NEPA.

## IV. MOTION FOR MORE DEFINITE STATEMENT

 The NRCS has not moved to dismiss the NEPA claims against it, but rather it asks for a more definite statement of the basis of those claims. *See* Fed.R.Civ.P. 12(e). In this district, Local Rule 12.1 provides: "Except for motions complaining of failure to plead fraud or mistake with partic-

---

6. The remainder of the NEPA regulations alleged by Plaintiff to have been violated here are general provisions, such as the regulatory Mandate, 40 C.F.R. § 1500.3, that do not themselves impose any particular obligation on agency actors.

ularity pursuant to Fed.R.Civ.P. 9(b), a motion for more definite statement may only be filed where the information sought cannot be obtained by discovery." Although discovery in this case shall be limited strictly to the administrative record(s) at issue, it is not entirely prohibited. *See Joseph G. Moretti, Inc. v. Hoffman,* 526 F.2d 1311, 1312 (5th Cir.1976) (affirming denial of "expansive" discovery in an administrative review). Defendant's motion is therefore denied.

## V. CONCLUSION

For the reasons given above, Defendants' Partial Motion to Dismiss is **GRANTED**. Plaintiff's claims in Count I of the Complaint under the Clean Water Act and pursuant to the Administrative Procedure Act ("APA") against Defendant Jane Saginaw, Regional Administrator, United States Environmental Protection Agency ("EPA"), are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Plaintiff's claims in Count I of the Complaint under the National Environmental Policy Act ("NEPA") against the EPA are **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief may be granted. Fed.R.Civ.P. 12(b)(6). Count I of Plaintiff's Complaint is therefore dismissed in its entirety. The EPA is **DISMISSED** as a party to this lawsuit.

For the reasons discussed above, the Plaintiff's claims in Count II of the Complaint brought pursuant to the Clean Water Act against Defendant Paul Johnson, Chief, United States Department of Agriculture, Natural Resources Conservation Service ("NRCS") are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The sole claim remaining in this case is for judicial review of Plaintiff's claim in Count II brought pursuant to NEPA against the NRCS.

Defendants' Motion for a More Definite Statement with regard to the NEPA claim against the NRCS is **DENIED**.

SO ORDERED.